# EXHIBIT E

AMERICAN OVERSIGHT

January 16, 2026

**VIA EMAIL**

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street, S.W., Mail Stop 5900
Washington, D.C. 20536-5900
GILDFOIAAppeals@ice.dhs.gov

**Re: Appeal of Expedited Processing Denial in FOIA Request 2026-ICFO-09147**

Dear Appeals Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Department of Homeland Security ("DHS") regulations at 6 C.F.R. § 5.8, American Oversight submits this appeal of the determination by Immigration and Customs Enforcement ("ICE") that the expedited processing justification in request **2026-ICFO-09147** (internal tracking number DHS-ICE-25-2940) did not adequately explain the urgency to inform the public. Because American Oversight's FOIA request satisfies the statutory requirements for expedited processing, ICE should reverse this decision and grant American Oversight's request for expedition.

As set forth in detail below, American Oversight's FOIA request seeks records regarding the Transportation Security Administration's ("TSA") sharing of data with ICE for immigration enforcement purposes at U.S. airports. These records involve issues of significant national interest: millions of Americans and non-U.S. citizens travel via airports every day, whether to see loved ones, travel for business, or otherwise. Expedited processing is urgently needed to timely inform the public of this data-sharing agreement, so that Americans can know what information is being shared with ICE, which has historically not conducted immigration enforcement for domestic travel.

## Background

On December 19, 2025, American Oversight submitted a FOIA request to ICE with internal tracking number DHS-ICE-25-2940, seeking records with the potential to shed light on a reported agreement with TSA to share passengers' data. *See* Ex. A ("FOIA Request"). Specifically, the request sought:

> A complete copy (including any attachments) of all contracts or subcontracts, amendments, inter-governmental service agreements, memoranda of understanding, or other written agreements between TSA and ICE.
>
> **Please provide all responsive records created or in effect from March 1, 2025, through the date the search is conducted.**

Ex. A.

The FOIA request included an application for expedited processing. *See id.* By an email dated January 6, 2026, ICE denied American Oversight's expedited processing application. *See* Ex. B. ICE found that American Oversight's request "failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally." It further stated that the application was "conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards." *See id.* American Oversight hereby appeals that decision.

**Argument**

Agencies must process FOIA requests on an expedited basis when the requester "demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i)(I). A compelling need is shown when, *e.g.*, the request is "made by a person primarily engaged in disseminating information" and establishes an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v); *see also* 6 C.F.R. § 5.5(e)(1)(ii). In evaluating urgency to inform, courts consider "at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001); *see also Am. Civil Liberties Union ("ACLU") v. U.S. Dep't of Just.*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004).

Here, ICE does not dispute that American Oversight is "primarily engaged in disseminating information." *See* Ex. B. And because American Oversight has amply demonstrated that there is an urgency to inform the public about a federal agency (TSA)—whose statutory mandate does not immigration enforcement—sharing data with of all passengers, including U.S. citizens, with ICE, ICE is obligated to process American Oversight's request on an expedited basis.

**There is an urgency to inform the public concerning actual or alleged federal government activity.**

***First***, there is no dispute that the request, seeking records that would shed light on the TSA sharing travelers' personal information with ICE for enforcement purposes, concerns federal government activity.

***Next***, the matter is one of current exigency and great interest to the American public. Courts look to widespread media interest as evidence of exigency. *See Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017) (stating that "one need look no further than the widespread media attention—including by some of the nation's most prominent news outlets" devoted to coverage of the subject of plaintiff's requests—to determine exigency).

In mid-December, the *New York Times* reported that TSA was sharing passenger data – including that of American citizens – with ICE, upending longstanding norms for both agencies.[1] TSA has not previously been involved in domestic criminal or immigration matters, and ICE has not historically engaged with domestic travel.[2] Following this reporting, many other national news outlets – as well as local ones – covered the story.[3]

In addition to the reporting on the specific policy, national and local media have reported the stories of at least two people who are thought to have been deported in recent weeks due to their travel information being shared with ICE by TSA.[4] One of those individuals, Any Lucia López Belloza, was flying to surprise her family for the Thanksgiving holiday; she was instead deported to Honduras.[5] She "was never shown a warrant, a removal order or given any

---

[1] Hamed Aleaziz, *Immigration Agents Are Using Air Passenger Data for Deportation Effort*, N.Y. Times (Dec. 12, 2025), https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html.

[2] *See* Aleaziz, *supra* note 1; Dan Mangan, *TSA Is Giving Airline Passenger Data to ICE for Deportation Push*, CNBC (Dec. 12, 2025, 4:35 PM), https://www.cnbc.com/2025/12/12/ice-deportation-airline-passengers-tsa.html.

[3] Dan Mangan, *TSA Is Giving Airline Passenger Data to ICE for Deportation Push*, CNBC (Dec. 12, 2025, 4:35 PM), https://www.cnbc.com/2025/12/12/ice-deportation-airline-passengers-tsa.html; Charna Flam, *Trump Administration Instructs U.S. Airports to Feed ICE the Name of Every Passenger: Report*, People (Dec. 12, 2025, 10:16 PM), https://people.com/trump-administration-instructs-tsa-to-give-ice-the-name-of-every-passenger-11868539/; CK Smith, *Flying May Now Come with Immigration Enforcement Attached*, Salon (Dec. 13, 2025, 1:00 PM), https://www.salon.com/2025/12/13/flying-may-now-come-with-immigration-enforcement-attached/; Josh Marcus, *The TSA is Providing Airline Passenger Data to ICE to Aid Trump's Deportation Efforts, Report Says*, The Independent (Dec. 12, 2025, 7:43 PM), https://www.the-independent.com/news/world/americas/us-politics/passenger-data-travel-tsa-ice-trump-b2883730.html; Eli Wolfe, *Oakland Airport's New Guest Program May Risk Feeding Information to ICE*, Oaklandside (Dec. 16, 2025, 1:30 PM), https://oaklandside.org/2025/12/16/oakland-airport-guest-pass-program-ice-information-sharing/; Charna Flam, *Trump Administration Instructs U.S. Airports to Feed ICE the Name of Every Passenger: Report*, People (Dec. 12, 2025, 10:16 PM), https://people.com/trump-administration-instructs-tsa-to-give-ice-the-name-of-every-passenger-11868539; Sam Levin et al., *House Republicans Release Last-minute Healthcare Plan; TSA Defends Sharing Traveler Names with ICE - As It Happened*, Guardian (Dec. 12, 2025, 10:01 PM), https://www.theguardian.com/us-news/live/2025/dec/12/obamacare-health-premiums-donald-trump-redistricting-aid-venezuela-latest-news-updates; Xavier Walton, *TSA Is Sharing Airline Passenger Data with ICE*, NewsNation (Dec. 15, 2025, 11:05 AM), https://www.newsnationnow.com/travel/tsa-sharing-airline-passenger-data-ice/; *TSA Quietly Shares All Passenger Data with ICE in Sweeping Deportation Expansion*, South Florida Reporter, (Dec. 13, 2025), https://southfloridareporter.com/tsa-quietly-shares-all-passenger-data-with-ice-in-sweeping-deportation-expansion/.

[4] *See* Flam, *supra* note 3; Aleaziz, *supra* note 2.

[5] Hanna Park, *A College Freshman Deported While Flying Home for Thanksgiving Is Fighting to Return. Here's What We Know about Her Case*, CNN (Dec. 2, 2025), https://www.cnn.com/2025/12/01/us/babson-college-student-deported-thanksgiving-hnk; *see also* Claudia Mendoza & Tiago Rogero, *Student Describes 'Horror Show' ICE Deportation to*

explanation for why she had been detained," and "was deported even after a federal judge issued an order barring the government from removing her from the US or transferring her outside of Massachusetts, according to her attorney and federal court documents."[6]

The extensive media coverage regarding this TSA-ICE collaboration, leaves "little doubt . . . that 'the subject matter of the request is central to a pressing issue of the day.'" *Protect Democracy Project*, 263 F. Supp. 3d 293 at 300 (quoting *Wadleton v. Dep't of State*, 941 F. Supp. 2d 120, 123 (D.D.C. 2013) (citation modified)). Therefore, American Oversight has shown that the matter is a current exigency and of great interest to the American public.

***Lastly***, the consequences of delay would "compromise a significant recognized interest." That significant recognized interest is present, as there is "an imminent action indicating that the requested information will not retain its value if procured through the normal FOIA channels." *See* Mem. Op., *Heritage Found. v. U.S. EPA*, Case No. 23-748 (JEB), 2023 WL 2954418 at *4 (D.D.C. Apr. 14, 2023).

The privacy interests of Americans and all residents of this country – at stake here, because of the data that TSA shares with ICE – is a significant recognized interest. In *ACLU v. U.S. Dep't of Just.*, requestors sought records related to the government's use of the USA Patriot Act. 321 F. Supp. 2d at 26. In ruling that a significant recognized interest was present, the Court noted that because the records "relate to current surveillance efforts, the potential invasion of the public's privacy interests is of immediate concern, weighing in favor of finding of expediency." *id.* at 30.

So too here: TSA's sharing of data with ICE is a current effort implicating the public's privacy rights. While TSA continues to share data with ICE, the public is unaware of the full scope of the agreement; the kind of data is being shared—including information belonging to U.S. citizens; and what safeguards are in place to prevent abuse.

Because delaying production of the requested records would further harm the public's privacy rights, this prong is likewise met.

**<u>Conclusion</u>**

For the foregoing reasons, ICE should reverse its decision and grant expedited processing under 6 C.F.R. § 5.5(e)(1)(ii), or grant expedited processing under 6 C.F.R. § 5.5(e)(1)(iv). Pursuant 6 C.F.R. § 5.5(e)(4), we look forward to your decision being adjudicated expeditiously. Please do not hesitate to contact me at the below phone number or email with questions regarding any part of this appeal or the underlying request for records.

---

*Honduras at Thanksgiving*, Guardian (Dec. 4, 2025, 8:33 AM), https://www.theguardian.com/us-news/2025/dec/04/student-describes-horror-show-ice-deportation-to-honduras-at-thanksgiving.

[6] *See id.*

Sincerely,

*/s/ Danny Martinez*
Danny Martinez
on behalf of
American Oversight
(202) 897-2465
foia@americanoversight.org

# EXHIBIT A

AMERICAN OVERSIGHT

December 19, 2025

**VIA ONLINE PORTAL**

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th St. SW
Stop 5009
Washington, DC 20536
Via Online Portal

**Re: Expedited Freedom of Information Act Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the implementing regulations of your agency, 6 C.F.R. Part 5, American Oversight makes the following request for records.

The Transportation Security Administration (TSA) is reportedly providing U.S. Immigration and Customs Enforcement (ICE) with a list of the names of all air travelers on a weekly basis.[1] American Oversight seeks records with the potential to shed light on this data sharing between agencies, including potential privacy considerations and use of this data for immigration enforcement purposes.

**Requested Records**

American Oversight seeks expedited review of this request for the reasons identified below and requests that your agency produce the following records as soon as practicable, and at least within twenty business days:

> A complete copy (including any attachments) of all contracts or subcontracts, amendments, inter-governmental service agreements, memoranda of understanding, or other written agreements between TSA and ICE.
>
> **Please provide all responsive records created or in effect from March 1, 2025, through the date the search is conducted.**

---

[1] *See, e.g.*, Hamed Aleaziz, *Immigration Agents Are Using Air Passenger Data for Deportation Effort*, N.Y. Times, Dec. 12, 2025, https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html.

**Fee Waiver Request**

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and your agency's regulations, American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way. Moreover, the request is for non-commercial purposes.

American Oversight requests a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."[2] The public has a significant interest in collaboration between TSA and ICE on immigration enforcement.[3] Records with the potential to shed light on this would contribute significantly to public understanding of operations of the federal government, including potential privacy considerations for sharing data between these agencies. American Oversight is committed to transparency and makes the responses agencies provide to FOIA requests publicly available, and the public's understanding of the government's activities would be enhanced through American Oversight's analysis and publication of these records.

This request "is not primarily in the commercial interest of the requester."[4] In fact, as a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose, and the release of the information requested is not in American Oversight's commercial interest. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and X (formerly Twitter).[5]

American Oversight has also demonstrated its commitment to the public disclosure of documents and creation of editorial content through regular substantive analyses posted to its website.[6] Examples reflecting this commitment include the posting of records related to the first Trump Administration's contacts with Ukraine and analyses of those

---

[2] 5 U.S.C. § 552(a)(4)(A)(iii).

[3] *See, e.g.*, Alex Nguyen, *TSA is Forwarding Names, Photos, and Flight Details to ICE*, Mother Jones, Dec. 13, 2025, https://www.motherjones.com/politics/2025/12/tsa-ice-deporting-traveler-flight-details/.

[4] 5 U.S.C. § 552(a)(4)(A)(iii).

[5] American Oversight currently has approximately 16,000 followers on Facebook and 94,300 followers on X (formerly Twitter). American Oversight, Facebook, https://www.facebook.com/weareoversight/ (last visited Dec. 18, 2025); American Oversight (@weareoversight), X (formerly Twitter), https://x.com/weareoversight (last visited Dec. 18, 2025).

[6] *See generally News*, American Oversight, https://www.americanoversight.org/blog.

contacts;[7] posting records and editorial content about the federal government's response to the COVID-19 pandemic;[8] posting records received as part of American Oversight's "Audit the Wall" project to gather and analyze information related to the first Trump administration's proposed construction of a barrier along the U.S.-Mexico border, and analyses of what those records reveal;[9] the posting of records related to an ethics waiver received by a senior Department of Justice attorney and an analysis of what those records demonstrated regarding the Department's process for issuing such waivers;[10] and posting records and analysis of federal officials' use of taxpayer dollars to charter private aircraft or use government planes for unofficial business.[11]

Accordingly, American Oversight qualifies for a fee waiver.

**<u>Application for Expedited Processing</u>**

Pursuant to 5 U.S.C. § 552(a)(6)(E)(i) and 6 C.F.R. § 5.5(e), American Oversight requests that your agency expedite the processing of this request.

I certify to be true and correct to the best of my knowledge and belief that the information requested concerns "actual or alleged federal government activity."[12] There can be no dispute that TSA, a federal agency, reportedly sharing a list of names, photographs, and flight information of air travelers with another federal agency, ICE, on a weekly basis, concerns alleged or actual federal government activity.

---

[7] *Trump Administration's Contacts with Ukraine*, American Oversight, https://www.americanoversight.org/investigation/the-trump-administrations-contacts-with-ukraine.

[8] *See generally The Trump Administration's Response to Coronavirus*, American Oversight, https://www.americanoversight.org/investigation/the-trump-administrations-response-to-coronavirus; *see, e.g.*, *CDC Calendars from 2018 and 2019: Pandemic-Related Briefings and Meetings*, American Oversight, https://www.americanoversight.org/cdc-calendars-from-2018-and-2019-pandemic-related-briefings-and-meetings.

[9] *See generally Audit the Wall*, American Oversight, https://www.americanoversight.org/investigation/audit-the-wall; *see, e.g.*, *Audit the Wall: No Plans, No Funding, No Timeline, No Wall*, American Oversight, https://americanoversight.org/audit-the-wall-no-plans-funding-or-timeline-and-no-wall/.

[10] *DOJ Records Relating to Solicitor General Noel Francisco's Recusal*, American Oversight, https://www.documentcloud.org/documents/25544090-doj-records-relating-to-solicitor-general-noel-franciscos-recusal-american-oversight; *Francisco & the Travel Ban: What We Learned from the DOJ Documents*, American Oversight, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents.

[11] *See generally Swamp Airlines: Chartered Jets at Taxpayer Expense*, American Oversight, https://www.americanoversight.org/investigation/swamp-airlines-private-jets-taxpayer-expense; *see, e.g.*, *New Information on Pompeo's 2017 Trips to His Home State*, American Oversight, https://www.americanoversight.org/new-information-on-pompeos-2017-trips-to-his-home-state.

[12] 6 C.F.R. § 5.5(e)(1)(ii).

Moreover, I certify to be true and correct to the best of my knowledge and belief that there is an urgent need to inform the public about the collaboration between TSA and ICE for immigration enforcement purposes. TSA's reported sharing of information with ICE upends longstanding norms for both agencies: TSA has not previously been involved in domestic criminal or immigration matters and ICE has not historically engaged with domestic travel.[13] Collaboration between ICE and TSA comes as the Trump administration has sought to increase the number of immigration arrests under pressure from the White House.[14] At least two people are thought to have been deported in recent weeks due to their travel information being shared with ICE.[15] There are significant concerns about the collaboration between TSA and ICE violating due process rights for people arrested and swiftly deported without access to an attorney as a result of the data sharing arrangement.[16] Furthermore, this program was not publicly disclosed, and advocates have warned that there are significant surveillance and privacy implications with this data sharing, as travelers were not informed that their personal information would be used for immigration enforcement purposes.[17] ICE has reportedly held more than 170 U.S. citizens against their will this year,[18] raising additional concerns of civil rights violations as the data of citizens is shared with ICE. Furthermore, record highs for domestic air travel are expected (around 8 million travelers) during the upcoming holiday season, heightening the risk that additional

---

[13] *See* Aleaziz, *supra* note 1; Dan Mangan, *TSA Is Giving Airline Passenger Data to ICE for Deportation Push*, CNBC (Dec. 12, 2025, 4:35 PM), https://www.cnbc.com/2025/12/12/ice-deportation-airline-passengers-tsa.html.

[14] *Id.*

[15] *See, e.g.*, Charna Flam, *Trump Administration Instructs U.S. Airports to Feed ICE the Name of Every Passenger: Report*, People (Dec. 12, 2025, 10:16 PM), https://people.com/trump-administration-instructs-tsa-to-give-ice-the-name-of-every-passenger-11868539.

[16] *See* Aleaziz, *supra* note 1; Hanna Park, *A College Freshman Deported While Flying Home for Thanksgiving Is Fighting to Return. Here's What We Know about Her Case*, CNN, Dec. 2, 2025, https://www.cnn.com/2025/12/01/us/babson-college-student-deported-thanksgiving-hnk. The college freshman "was never shown a warrant, a removal order or given any explanation for why she had been detained," and "was deported even after a federal judge issued an order barring the government from removing her from the US or transferring her outside of Massachusetts, according to her attorney and federal court documents." *Id.*

[17] *See, e.g.*, CK Smith, *Flying May Now Come with Immigration Enforcement Attached*, Salon (Dec. 13, 2025, 1:00 PM), https://www.salon.com/2025/12/13/flying-may-now-come-with-immigration-enforcement-attached/; Josh Marcus, *The TSA is Providing Airline Passenger Data to ICE to Aid Trump's Deportation Efforts, Report Says*, The Independent (Dec. 12, 2025, 7:43 PM), https://www.the-independent.com/news/world/americas/us-politics/passenger-data-travel-tsa-ice-trump-b2883730.html.

[18] *See* Nicole Foy, *We Found That More Than 170 U.S. Citizens Have Been Held by Immigration Agents. They've Been Kicked, Dragged and Detained for Days*, ProPublica (Oct. 16, 2025, 12:00 PM), https://www.propublica.org/article/immigration-dhs-american-citizens-arrested-detained-against-will.

citizens and others being subjected to privacy and civil rights violations.[19] Given this anticipated high volume of air travel and the lack of public information about data sharing between ICE and TSA, American Oversight's FOIA request seeks information urgently needed to inform the public about federal government activities that will impact millions of people.

I further certify that American Oversight is primarily engaged in disseminating information to the public. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. Similar to other organizations that have been found to satisfy the criteria necessary to qualify for expedition,[20] American Oversight "'gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience.'"[21] American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, and other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and Twitter.com.[22] As discussed previously, American Oversight has demonstrated its commitment to the public disclosure of documents and creation of editorial content.[23]

---

[19] *See, e.g.*, Max Molski, *Record Travel Expected for Christmas and New Year's. Here Are the Days to Avoid*, NBC New York (Dec. 10, 2025, 10:23 AM), https://www.nbcnewyork.com/news/national-international/christmas-new-years-travel-record-projections-2025/6428474/.

[20] *See ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 30–31 (D.D.C. 2004); *EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

[21] *ACLU*, 321 F. Supp. 2d at 29 n.5 (quoting *EPIC*, 241 F. Supp. 2d at 11).

[22] American Oversight currently has approximately 16,000 followers on Facebook and 94,300 followers on X (formerly Twitter). American Oversight, Facebook, https://www.facebook.com/weareoversight/ (last visited Dec. 18, 2025); American Oversight (@weareoversight), X (formerly Twitter), https://x.com/weareoversight (last visited Dec. 18, 2025).

[23] *See generally News*, American Oversight, https://www.americanoversight.org/blog; *see, e.g.*, *Emails and Resume of Trump's Pick to Head Government Personnel Office*, American Oversight, https://www.americanoversight.org/emails-and-resume-of-trumps-pick-to-head-government-personnel-office; *CDC Calendars from 2018 and 2019: Pandemic-Related Briefings and Meetings*, American Oversight, https://www.americanoversight.org/cdc-calendars-from-2018-and-2019-pandemic-related-briefings-and-meetings; *State Department Releases Ukraine Documents to American Oversight*, American Oversight, https://www.americanoversight.org/state-department-releases-ukraine-documents-to-american-oversight; *Documents Reveal Ben Carson Jr.'s Attempts to Use His Influence at HUD to Help His Business*, American Oversight, https://www.americanoversight.org/documents-reveal-ben-carson-jr-s-attempts-to-use-his-influence-at-hud-to-help-his-business; *Investigating the Trump Administration's Efforts to Sell Nuclear Technology to Saudi Arabia*, American Oversight, https://www.americanoversight.org/investigating-the-trump-administrations-efforts-to-sell-nuclear-technology-to-saudi-arabia; *Sessions' Letter Shows DOJ Acted On Trump's*

Accordingly, American Oversight's request satisfies the criteria for expedition.

**Guidance Regarding the Search & Processing of Requested Records**

In connection with its request for records, American Oversight provides the following guidance regarding the scope of the records sought and the search and processing of records:

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics.

- In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind.

- Our request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to our request, our request includes all prior messages sent or received in that email chain, as well as any attachments to the email.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA.[24] It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; American Oversight has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.[25]

- Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically,[26] and many

---

*Authoritarian Demand to Investigate Clinton*, American Oversight, https://www.americanoversight.org/sessions-letter.

[24] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016).

[25] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016).

[26] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of

agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted by the agency before the completion of processing for this request. If records potentially responsive to this request are likely to be located on systems where they are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold on those records.

**Conclusion**

If you have any questions regarding how to construe this request for records or believe that further discussions regarding search and processing would facilitate a more efficient production of records of interest to American Oversight, please do not hesitate to contact American Oversight. American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and your agency can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in an electronic format by email. Alternatively, please provide responsive material in native format or in PDF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on a rolling basis.

We share a common mission to promote transparency in government. American Oversight looks forward to working with your agency on this request. If you do not understand any part of this request, please contact Danny Martinez at foia@americanoversight.org or (202) 897-2465. Also, if American Oversight's request

Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

for expedition is not granted or its request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

*/s/ Danny Martinez*
Danny Martinez
on behalf of
American Oversight

# EXHIBIT B

From: ice-foia@ice.dhs.gov <noreply@securerelease.us>
To: foia@americanoversight.org
Date: 1/6/2026 5:43:58 PM
Subject: ICE FOIA 2026-ICFO-09147

EXTERNAL SENDER

01/06/2026

Taylor
Stoneman
1030 15th Street, NW, B255
Washington, District of Columbia 20005

RE: ICE FOIA Case Number 2026-ICFO-09147

Dear Requester:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated 12/19/2025, your request for a waiver of all assessable FOIA fees, and your request for expedited treatment. Your request was received in this office on 12/19/2025. Specifically, you have requested records pertaining to f all contracts or subcontracts, amendments, inter-governmental service agreements, memoranda of understanding, or other written agreements between TSA and ICE. Seeking records from March 1, 2025 to present.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you're able to narrow the scope of your request please contact our office. Narrowing the scope may speed up the search process. We will make every effort to comply with your request in a timely manner.

In addition, ICE acknowledges that your FOIA request includes a request for fee waiver. We will adjudicate this request only if the agency is allowed to assess fees under the FOIA. See 6 C.F.R. § 5.11(c)-(d). If this is the case, you will be notified of our decision in a separate communication. If there are no assessable fees, your request for a fee waiver will be moot, and you will not receive further communications from ICE regarding fees related to this FOIA request.

Your request for expedited treatment is hereby denied.

Under the DHS FOIA regulations, expedited processing of a FOIA request is warranted if the request involves "circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(e)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating

information," 6 C.F.R. § 5.5(e)(l)(ii). Requesters seeking expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct. 6 C.F.R. § 5.5(e)(3).

Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1). You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally. Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

If you deem the decision to deny expedited treatment of your request an adverse determination, you have the right to appeal. Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. Part 5 § 5.5(e)(2). You may submit your appeal electronically at GILDFOIAAppeals@ice.dhs.gov or via regular mail to:

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street,, S.W.,
Mail Stop 5900
Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

If you have any questions, please contact FOIA Public Liaison Daniel Edgington, at (866) 633-1182 or 500 12th St, SW Stop 5009 Washington, DC 20536-5009. Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448.

Your request has been assigned reference number 2026-ICFO-09147. Please use this number in future correspondence.

Sincerely,

ICE
FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009